398 So.2d 108 (1981)
Robert L. ALLEN, Plaintiff-Appellant,
v.
Herbert SUMRALL, Administrator, Louisiana Office of Employment Security et al., Defendants-Appellees.
No. 8069.
Court of Appeal of Louisiana, Third Circuit.
April 15, 1981.
Neblett, Weeks & Neblett, David H. McCroskey, Alexandria, for plaintiff-appellant.
James D. Caldwell, Baton Rouge, for defendants-appellees.
Before DOMENGEAUX, CUTRER and DOUCET, JJ.
DOUCET, Judge.
The Board of Review for the Department of Labor, Office of Employment Security, denied plaintiff's claim for unemployment compensation benefits because plaintiff was discharged for misconduct connected with his employment. LSA-R.S. 23:1601(2). Plaintiff filed suit in district court for judicial review of the administrative tribunal's decision. LSA-R.S. 23:1634. The trial court upheld the administrative tribunal's denial of unemployment compensation benefits and dismissed plaintiff's claim. Plaintiff appeals. We affirm.
*109 Upon denial of an appeal by the board, the decision of the appeals referee is deemed to be the decision of the board. LSA-R.S. 23:1630. The trial court accepted the findings of fact as stated by the appeals referee:
"The claimant had worked for the named employer for about three years as an Attendant I for the rate of pay of $618.00 per month. He was scheduled to work from 10:00 PM to 6:00 AM, five days per week, Sunday through Thursday. The claimant was discharged from his job by Mr. Coates Stuckey, Superintendent, by letter, giving his reason for the discharge as, one of which, sleeping on job. The claimant had been observed on September 13, 1979, at approximately 2:30 AM, on Cottage 402, by Mr. W. Sibley, Cottage Life Supervisor I, Mrs. Effie Bryant, Behavioral Shaping Supervisor II, and Mrs. Melba Dyess, Resident Training Specialist III. The claimant was observed sitting in a chair with his back to the door and the lights out, in a room and appeared to be asleep. Mr. Sibley had stood at the door for approximately one minute before anyone in the room made a sound, at which time, one of the other workers in the room stated that she heard a noise and at this time Mr. Sibley turned the lights on. The claimant had been given a suspension, once before for sleeping on the job. Mr. Sibley stated that he could not see if the claimant had his eyes shut or not but after speaking to the other party, the claimant raised up and turned his head around to see who was there. Mrs. Payton, co-worker and Charge Attendant and also Mrs. Wiggins, Attendant I and co-worker, were suspended at [sic] this was their first offense. It is against rules and regulations to be sitting in a room with the lights out where they cannot see the patient and someone must be on duty where the patients are at all times. Mrs. Payton stated that she had just come back from putting clothes in a dryer, and at this time went with Mr. Sibley to see if there were clothes in the dryer and when they returned the lights were out again. The claimant was called in and talked to about the discrepancy and at this time Mr. Sibley took Mrs. Payton's and Mrs. Wiggins' statements. Mr. Sibley stated at the time he was taking Mrs. Payton's statement, she indicated to him the claimant was sleeping but since then has changed her statement and this is the only discrepancy in what happened. The claimant stated he did have his back to the door and was looking out the window but was not asleep but was down in the chair and looked over his shoulder when he heard the other parties talking. The claimant had been suspended for the same type charge once before and as this was his second offense, he was discharged. The claimant stated he knew that someone had to be where they could observe the patients at all times and that the lights were not to be out in the room."
The plaintiff assigns as error: (1) the granting of a continuance by the appeals referee; (2) the failure of the appeals referee to limit his decision of disqualification to the specific acts set forth in the agency's initial determination of disqualification; and, (3) the failure of the appeals referee to apply the proper standard of law in reaching his decision.
The trial court's scope of review is limited by LSA-R.S. 23:1634:
"* * * In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. * * *"
A review of the record shows that the facts found by the appeals referee are sufficient to support the conclusion that plaintiff was sleeping on the job. Thus, this court's only consideration is the questions of law raised by the plaintiff.
First, plaintiff contends the appeals referee violated the rules of the board by ordering a continuance on his own motion without a written request on the part of the *110 employer. The appeals referee continued the hearing from November 7, 1979, until November 15, 1979, upon his own motion, to give the plaintiff an opportunity to confront the witnesses against him. Plaintiff agreed to the continuance. Plaintiff's brief fails to point out which rule of the board is violated by the continuance. In support of his contention, plaintiff cites Sustan Garments, Inc. v. Administrator of the Division of E. S., 211 So.2d 715 (La.App. 2nd Cir. 1968) in which the court affirmed the board's dismissal of an appeal where the employer, after requesting a rescheduling of the hearing until a later date, failed to appear at the new hearing date or present any mitigating factors to excuse its absence. Here, the employer's representative appeared at both hearings. The appeals referee did not act improperly in ordering a continuance.
Second, plaintiff contends that the appeals referee's decision violated the requirements of notice and a fair hearing by considering other actions of the plaintiff outside of the specific acts set forth in the agency's initial determination of disqualification. See Immel v. Brown, 143 So.2d 156 (La.App. 3rd Cir. 1962).
The agency disqualified plaintiff for misconduct connected with his employment upon learning that plaintiff was discharged from his job for sleeping on duty.
The appeals referee's decision states:
"From the evidence and facts presented, it is concluded that it is not clear whether the claimant was actually asleep, or not, but he was in a room with the lights out with his back to the door, looking out the window and could not observe the patients he was hired to watch. It is further concluded there were other duties the claimant could have been performing and that he also did not observe the party who walked up to the door of the room where he was, with the lights out, and did not know they were standing at the door. It is further concluded that as this was the claimant's second offense of the same type, and he was discharged for this, his discharge was due to his own misconduct connected with the employment and under disqualifying conditions."
At the hearing, plaintiff was represented by a union official and produced two witnesses on his behalf. The hearing was limited to an inquiry into the events on the evening in question. Plaintiff contends that the appeals referee's decision is based upon other events disclosed at the hearing rather than a finding that plaintiff was sleeping on duty.
Plaintiff's contention is not supported by a reading of the appeals referee's decision. The first and third sentences quoted above show that the appeals referee concluded that plaintiff was sleeping on duty. The other events mentioned by the appeals referee Simply support his conclusion.
Finally, plaintiff contends that the appeals referee failed to apply the proper standard of law in reaching his decision, since sleeping on duty is not a wanton, willful or negligent disregard of the employer's interests. Plaintiff relies upon Pilgrim Manor Nursing Home, Inc. v. Gerace, 337 So.2d 660 (La.App. 3rd Cir. 1976), in which this court stated:
"[3] Misconduct under LSA-R.S. 23:1601(2) has been defined by the jurisprudence as an act of willful or wanton disregard of the employer's interest; a deliberate violation of the employer's rules; a disregard of the standards of behavior which the employer has the right to expect of his employee; or, negligence in such degree or recurrence as to manifest culpability, wrongful interest, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. Heard v. Doyal 259 So.2d 412 (La.App. 2nd Cir. 1972); Horns v. Brown 243 La. 936, 148 So.2d 607 (1963); Payne v. Antoine's Restaurant 217 So.2d 514 (La.App. 4th Cir. 1969); Rankin v. Doyal 223 So.2d 214 (La.App. 2nd Cir. 1972).
Considering the claimant's term of service with the plaintiff and the fact that she was at her station working a late night shift on her day off in replacement *111 of another nurse at the employer's request, we conclude that the defendant's action in dozing off while on duty did not constitute a deliberate violation of the employer's rules nor did such action, under the circumstances, constitute a wanton, willful or negligent disregard of the employer's interest."
In Pilgrim Manor, the court found other circumstances present which mitigated the effect of the employee's conduct. Sleeping on the job is sufficient misconduct to disqualify an employee from receiving unemployment compensation benefits. Hall v. Doyal, 191 So.2d 349 (La.App. 3rd Cir. 1966). Here, the plaintiff was working his regular shift and had been suspended previously for the same offense. Under the circumstances, plaintiff was guilty of misconduct sufficient to disqualify him for unemployment compensation.
The decision of the trial court is affirmed at appellant's cost.
AFFIRMED.
DOMENGEAUX, J., who was a member of the panel in the Pilgrim Manor case concurs, and agrees that the case is readily distinguishable.