DOUCET, Judge.
The primary issue presented by this appeal is whether or not the trial court erred in sustaining the decision of the Board of Review of the Louisiana Office of Employment Security which denied plaintiff unemployment compensation benefits.
Plaintiff was discharged from her employment with St. Patrick Hospital on the ground that she was sleeping while on duty. After being discharged, plaintiff applied for and was granted unemployment benefits. The notice sent by the Louisiana Department of Labor specified that plaintiff was discharged from her employment on the ground that St. Patrick Hospital contended that she was sleeping while on duty; however, because she denied the allegations, she was not disqualified from receiving unemployment compensation benefits. From this decision, St. Patrick Hospital appealed. After a hearing, the appeals referee found that plaintiff was asleep while on duty and that this violation of company policy was sufficient to disqualify her from receiving unemployment compensation benefits. The decision of the appeals referee was affirmed by the Board of Review. Plaintiff then filed a petition for judicial review of the Board’s decision with the Fourteenth Judicial District Court, Cal-casieu Parish, Louisiana. After a hearing, *838 the District Court affirmed the decision of the Board of Review. It is from this judgment that plaintiff has appealed. We affirm.
The appeals referee made the following findings of fact from the evidence presented:
“The claimant worked for the named employer as a Relief Registered Nurse. She generally worked 11:00 p.m. to 7:00 a.m. shift on Unit 44. On the morning of May 27, 1987, sometime after 5:00 a.m., the Night Supervisor was making rounds through that unit and observed the claimant sitting at the Charting Desk with her head bent forward as if she were asleep. He walked up to her and noticed her head bent forward and eyes closed with her hands in her lap. The Supervisor stepped back and then forward again, but the claimant did not shift her position in any way. He stood for a period of about 45 seconds during which time the claimant did not move. He then turned to walk away at which time an LPN came into the nursing station making noise so that when he turned around the claimant was getting up from her seat. “The Supervisor did not confront the claimant about this incident at that time. He asked the LPN later if she had also noted the claimant sitting there appearing to be asleep. The LPN confirmed this. He later questioned the Charge Nurse as to whether she had seen the claimant asleep and indicated what he had seen, however, the Charge Nurse had been doing other duties and she did not see the claimant asleep as she felt they were so busy that the claimant would have had little time to sleep while performing her duties. The incident was reported to the Assistant Director of Nursing when she came on duty. The claimant was questioned by the Assistant Director of Nursing. During the questioning the claimant acknowledged that she may have “dozed off” while she was sitting at the desk, but she had been sitting at the desk which was her only opportunity to chart information about the patients that night and that for periods of time during her charting she must stop to “collect her thoughts.” Both the claimant and Night Supervisor who reported the incident were present during each others statements. At the conclusion of this meeting, the claimant was advised that she was suspended until further notice. The Assistant Director of Nursing then questioned the LPN and others who normally worked with the claimant, and states she was given indications that the claimant had been asleep on duty on past occasions, although only the LPN was present at the time of the incident on this occasion. Based on the information gathered and reports of the incident on that last day, the claimant was advised of her termination.”
Plaintiff, Avery, urges that the trial court erred in affirming the decision .of the Louisiana Board of Review, which assessed a disqualification under La. R.S. 23:1601(2). We disagree.
In order to properly address this issue, we must first determine whether the trial judge erred in holding that the findings of fact as established by the Board of Review were supported by sufficient evidence.
The law in Louisiana is well settled that the scope of review in this case is limited by La. R.S. 23:1634. This statute provides that the findings of the Board of Review as to facts, if supported by sufficient evidence in the absence of fraud, shall be conclusive and the jurisdiction of the court shall be confined to questions of law. Sanders v. Adm’r of Office of Emp. Sec., 520 So.2d 1091 (La.App. 3rd Cir.1987).
In the instant case, the record reflects that plaintiff was terminated from her employment with St. Patrick’s.Hospital for sleeping while on duty. This was corroborated by Mr. Joe Roebush, an employee of St. Patrick’s Hospital when he testified that he observed plaintiff sleeping. Mr. Roebush also testified that he was present when plaintiff admitted to Ms. Hartley, another employee of St. Patrick’s Hospital, that she had “dozed off.” Also, Ms. Addie Cooley, an LPN at St. Patrick's Hospital, testified that she observed plaintiff- sleeping while on duty. Finally, Ms. *839 Barbara Haifley testified that plaintiff admitted to her that she had had a busy night and that she sat down and “dozed off.”
Based on the foregoing, we find that the evidence in the instant case was sufficient to support the finding that plaintiff had been sleeping while on duty. Thus, we find that the District Court did not err when it made such a finding.
We next address whether the trial judge erred in finding that plaintiffs sleeping while on duty was sufficient misconduct connected with her employment to disqualify her from receiving unemployment compensation benefits.
Misconduct has been jurisprudentially defined by this court in Gallien v. Adm’r, Office of Emp. Sec., 511 So.2d 70, 72 (La.App. 3rd Cir.1987) as:
“[A]n act of willful or wanton disregard of the employer’s interest, a deliberate violation of the employer’s rules, a disregard of the standards of behavior which the employer has a right to expect of the employee, or negligence to such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer’s interest or of the employee’s duties and obligations to the employer.” (citations omitted.)
As previously stated, plaintiff was discharged from her employment with St. Patrick’s Hospital for sleeping while on duty. Plaintiff contends that sleeping while on duty is not misconduct sufficient to disqualify her from benefits. In support of this contention, plaintiff cites Pilgrim Manor Nursing Home, Inc. v. Gerace, 337 So.2d 660 (La.App. 3rd Cir.1976). The trial judge fully addressed this issue in his reasons for judgment which we adopt as our own:
“The court in Pilgrim found that the dozing off momentarily of a nurses’ aide who had worked for her employer for three and one-half years; and who was called in on her day off to replace a nurse who had not shown up and for this reason had not rested in preparation for the 11:00 P.M. to 7:00 A.M. shift, was not sufficiently serious misconduct to disqualify her. But see Allen v. Sumrall, 398 So.2d 108 (La.App. 3rd Cir.1981).
In this instance, the employee was not a nurses’ aide, but was a registered nurse, with 13 seriously ill patients under her care the morning of the incident.
The shifts were the same in each case, but the claimant in this instance was not called to work after the regular nurse had not shown up. The time she was called is not clear from the record, but the testimony reveals that she was called in plenty of time to have gotten some rest before she went on duty had she desired to do so. It was incumbent upon her to get that rest if she was going to work at 11:00 P.M. to avoid the risk of falling asleep. In Pilgrim, the nurses’ aide had no opportunity to do so.
The record does not reveal that the court in Pilgrim had the benefit of testimony, such as that of Barbara Haifley, Assistant Director of Nursing and of Re-bush[sic] in this case, to explain the seriousness of sleeping on duty. In their testimony, it was explained that: the patients were quite ill and that it is very dangerous for patients if their nurse sleeps on duty; it is difficult to wake up from a sleep and be at full capacity to know what’s going on in any situation; and that patients do not get the medications they need.
In this instance, claimant was found to be sleeping at approximately 5:00 A.M. Claimant herself testified that ‘... after 4:00 everything breaks loose. People start calling for medication. They start getting up and certain procedures have to be done by, you know, around 4:00— between 4:00 and 5:30.’
Haifley further explained that a nurse sleeping on duty causes a public relations problem. As she explained, ‘If a family member or patient is impatient about something and comes to the desk and finds somebody sleeping, it is very difficult to make them understand why anybody would be sleeping while they are paying the prices, and leaving their loved ones in our hands.’ Claimant was sleep *840 ing at the nurses station in full view of anyone in the corridor.
This explanation makes it very apparent why the hospital in its employees handbook lists as No. 3 among the causes for immediate dismissal “sleeping on duty.” While it is true that whether violation of an employer’s policy resulting in discharges justifies denial of compensation benefits has to be determined not by the employer’s policies and rules but by the Louisiana Employment Security law, the court is of the opinion that the hospital is fully justified in considering sleeping on duty sufficiently serious to justify discharge.
Claimant had accepted the position of relief nurse. She knew she would be called to work from time to time to replace a nurse on the 11:00 P.M. to 7:00 A.M. shift. That was what the job of relief nurse entailed. She was well aware of the penalty for sleeping on duty. She knew that she should get sufficient rest before going on duty to avoid or at least minimize the chance of falling asleep. Having had the opportunity to do so and not having done so, and allowing herself to go to sleep on duty amounts to a wanton disregard of the employer’s interest, a disregard of the interest of her and her employer’s patients, and a disregard of the standards of behavior which the employer has the right to expect of its employee.
The 3rd Circuit in Allen v. Sumrall, cited supra, stated, ‘Sleeping on the job is sufficient misconduct to disqualify an employee from receiving unemployment compensation benefits,’ and distinguished Pilgrim on the facts. Pilgrim does not say that a nurse sleeping on duty is not to be taken seriously. It only decided that under the extenuating circumstances of that case was the sleeping insufficient misconduct for disqualification!;.]”
Based upon the foregoing, we conclude that the trial court did not err in affirming the decision of the Board of Review finding that plaintiff’s behavior constituted misconduct connected with her employment sufficient to disqualify her from receiving unemployment compensation benefits.
Accordingly, for the reasons assigned, the judgment of the District Court denying plaintiff unemployment compensation benefits is affirmed. Costs may not be assessed against the Office of Employment Security, La. R.S. 13:5112(C); La.R.S. 23:1548; nor against plaintiff, La. R.S. 23:1692; Ducote v. Louisiana Office of Emp. Sec., Dept. of Labor, 401 So.2d 1087 (La.App. 3rd Cir.1981), nor should they be assessed against St. Patrick’s Hospital. Thus, it appears that no party to the litigation is legally responsible for the costs and they must be absorbed by the clerk and sheriff of the trial court. Hayes v. State, Office of Emp. Sec., Dept. of Labor, 467 So.2d 175 (La.App. 3rd Cir.1985).
AFFIRMED.